IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:07-CV-33-FL(3)

| | |
|---|---|
| LESLIE YUENGEL,<br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>    Defendant. | **MEMORANDUM &<br>RECOMMENDATION** |

This matter is before the Court upon the parties' joint Motions for Judgment on the Pleadings **[DE's 14-15 & 20-21]**. The time for the parties to file any responses or replies has expired. Accordingly, the matter is now ripe for adjudication. Pursuant to 28 U.S.C. 636(b)(1), this matter is before the undersigned for the entry of a Memorandum and Recommendation. The underlying action seeks judicial review of the final decision by Defendant denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). For the following reasons, it is HEREBY RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings **[DE-14]** be DENIED, Defendant's Motion for Judgment on the Pleadings **[DE-20]** be GRANTED, and that the final decision by Defendant be AFFIRMED.

## Statement of the Case

Plaintiff filed an application for DIB on November 6, 2003 alleging that she became unable to work on March 26, 2003 (Tr. 12). This application was denied at the initial and

1

reconsideration levels of review. *Id.* A hearing was later held before an Administrative Law Judge ("ALJ"), who found Plaintiff was not disabled during the relevant time period in a decision dated August 24, 2006. *Id.* at 12-20. The Social Security Administration's Office of Hearings and Appeals denied Plaintiff's request for review, rendering the ALJ's determination as Defendant's final decision. *Id.* at 5-7. Plaintiff filed the instant action on March 5, 2007 **[DE-4]**.

## Standard of Review

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...
> Id.

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility

determinations, or substitute [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990).

**Analysis**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process which must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f). Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the five-step evaluation. First, the ALJ found that Plaintiff is no longer engaged in substantial gainful employment (Tr. 14). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: 1) degenerative disc disease; and 2) a depressive disorder. *Id.* In completing step three, however, the ALJ determined that these impairments were not severe enough to meet or medically equal one

3

of the impairments listed in Appendix 1, Subpart P, Regulation No. 4. *Id*. at 14-15.

The ALJ then proceeded with step four of his analysis and determined that Plaintiff retained the residual functional capacity ("RFC") to perform a wide range of light, unskilled work. *Id*. at 15. Based on this finding, the ALJ found that Plaintiff was unable to perform her past relevant work as a printing preparation worker. *Id*. at 19. Finally, at step five the ALJ concluded that Plaintiff was not precluded from performing other work but rather that there were a significant number of jobs in the national economy that Plaintiff could perform *Id.* Accordingly, the ALJ determined that Plaintiff was not under a disability at any time through the date of her decision. *Id.* at 20. In making these determinations the ALJ cited substantial evidence, a summary of which now follows.

Plaintiff developed right shoulder pain in March, 2003. *Id.* at 168-174. She was treated in the emergency room and diagnosed with a shoulder strain. *Id.* at 170. Her shoulder was placed in a sling and she was advised to avoid lifting for two days. *Id.* at 168-170. Dr. Scott Yager later treated Plaintiff for her continued complaints of shoulder pain. *Id.* at 273. On April 7, 2003, Plaintiff noted that she had no pain in her neck and that her shoulder pain had shown some improvement. *Id.* at 271. An MRI was performed on April 23, 2003 which indicated that Plaintiff had a herniated disc at the C5-6 level. *Id.* at 306. However, "[n]o definite posterior displacement [suggesting] nerve root compression [was] identified." *Id.* Plaintiff was then referred to Dr. Devin Friedlander, who examined Plaintiff on May 8, 2003. *Id.* at 226-229.

Dr. Friedlander determined that Plaintiff had normal neurological findings with motor

4

strength rated at 5/5 and normal reflexes. *Id.* at 226-227. After this examination, Dr. Friedlander determined that Plaintiff was capable of returning to work. *Id.* at 227. Another MRI of Plaintiff's cervical spine was performed on May 19, 2003. *Id.* at 304-305. This MRI revealed sclerosis at the C5 level. *Id.* On June 23, 2003, Dr. Friedlander noted that Plaintiff was "feeling overall better" and that she was not "showing any signs of weakness" or "worsening of symptoms." *Id.* at 225. He also noted that Plaintiff had motor strength at 5/5 in her extremities. *Id.* Likewise, on September 22, 2003, Dr. Friedlander observed that Plaintiff's pain symptoms had improved. *Id.* at 222. Specifically, Dr. Friedlander noted that they were "of a waxing and waning frequency." *Id.* Ultimately, Dr. Friedlander diagnosed Plaintiff with radiculopathy and thoracic outlet syndrome. *Id.* A CT of Plaintiff's cervical spine performed on September 10, 2003 revealed disc protrusion at the C5-6 levels and degenerative changes with mild narrowing of the spinal canal. *Id.* at 236. Dr. Friedlander did not recommend surgery for Plaintiff. *Id.* at 222.

On February 24, 2004, Plaintiff underwent a consultative examination which was performed by Dr. Ronald Bagner. *Id.* at 183-187. Plaintiff was found to have a full range of motion of the cervical spine and the right shoulder, although she had pain on movement of the right shoulder. *Id.* at 183-184. She had normal neurological findings with normal motor strength, reflexes and sensory findings. *Id.* During the examination, Plaintiff: 1) ambulated without difficulty; 2) got on and off the examination table without difficulty; and 3) was not uncomfortable in the seated position. *Id.* X-rays of the cervical spine revealed loss of the normal lordosis but no loss of disc space height. *Id.* at 187. No intrinsic bone,

5

periosteal, joint or soft tissue abnormality was observed in the right shoulder. *Id.* Dr. Bagner diagnosed Plaintiff with cervical radiculopathy. *Id.* at 184.

Dr. Friedlander examined Plaintiff again on September 14, 2004. *Id.* at 223. This examination revealed that Plaintiff had normal reflexes and normal motor strength of the upper extremities. *Id.* Plaintiff was diagnosed with mild thoracic outlet and pain syndrome. *Id.*

Plaintiff's remaining treatment records with Dr. Yager indicate that Plaintiff has consistently reported neck and shoulder pain. However, upon examination Plaintiff demonstrated no paraspinal muscle tenderness and her neurological were within normal limits. *Id.* at 239-307. In summary, progress notes from Dr. Yager consistently indicate that: 1) Plaintiff's sensory and motor functioning were normal; and 2) her reflexes were symmetric. *Id.* at 256, 259, 261, 264, 266, 268, 270, 272, 274. Dr. Yager also treated Plaintiff for depressive symptoms including anhedonia, crying spells and lack of energy. *Id.* at 246. He prescribed treatment with zoloft, ambien and wellbutrin. *Id.* His notes also demonstrate that Plaintiff's depression was well-controlled with medication. *Id.* at 240, 246. Indeed, on September 5, 2003, Dr. Yager specifically noted that Plaintiff's "[d]epression [was] under good control." *Id.* at 257.

On February 20, 2004 Dr. Anna Marie Resnikoff performed a psychological examination of Plaintiff. *Id.* at 175-182. Dr. Resnikoff observed that Plaintiff was pleasant and cooperative and able to maintain eye contact. *Id.* at 176. Plaintiff's speech was clear, even paced and easy to understand. *Id.* In addition, Plaintiff demonstrated a high frustration

tolerance. *Id.* at 177. No abnormality of thought processes was demonstrated by Plaintiff and Plaintiff was properly oriented to time, place and person. *Id.* Dr. Resinikoff diagnosed Plaintiff with adjustment disorder along with a depressed and anxious mood. *Id.* at 181. However, it was noted that if Plaintiff was awarded benefits she would be able to handle them in her own best interests. *Id.*

Plaintiff sought treatment from Tideland Mental Health Center on June 8, 2006. *Id.* at 308-313. Although her affect was blunted and her mood was depressed, Plaintiff's thought processes were within normal limits. *Id.* at 309. It was noted that zoloft had been successful in treating her depression in the past. *Id.* She was diagnosed with major depression and prescribed treatment with zoloft and wellbutrin. *Id.* at 308. During a follow-up on June 23, 2006, Plaintiff was found to be calm, friendly and cooperative. *Id.* Her mood was down but her speech was normal and her affect was appropriate. *Id.* Plaintiff's psychomotor activity was also normal during this follow-up. *Id.* The prescribed treatment with zoloft and wellbutrin was continued. *Id.*

During the hearing in this matter, Plaintiff testified that she had gained approximately 50 pounds because she was unable to exercise. *Id.* at 33. She also stated that she no longer drives because of the pain medications she takes. *Id.* at 34. Furthermore, Plaintiff asserted that she could no longer work because of "very bad pain in [her] neck and through [her] head." *Id.* at 39. Specifically, she contended that she was incapable of picking up or carrying things because of her pain. *Id.* at 40. In addition, Plaintiff noted that she gets headaches every day and that she lays down approximately six hours per day. *Id.* at 41.

7

Plaintiff testified that: 1) she could walk for 10-15 minutes at a time; and 2) she could stand for approximately 10 minutes before she had to sit down and rest. *Id.* at 42. She stated that she was treated for depression before she stopped working and that her depression had worsened due to her chronic pain. *Id.* at 42. With regard to her depression, Plaintiff asserted that she suffered from: 1) insomnia; 2) difficulty concentrating and remembering; 3) being easily agitated; and 4) crying spells. *Id.* at 42-43. Likewise, Plaintiff contended that she only got dressed 4-5 times a month. *Id.* at 44. Finally, Plaintiff noted that her asthma was well controlled. *Id.* at 45.

With regard to Plaintiff's testimony, the ALJ made the following observations:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produced the alleged symptoms but that the claimants statements concerning the intensity, persistence, and limiting effects of the symptoms are not entirely credible. The claimant has only mild degenerative changes of the spine on radiological studies and these do not indicate any significant compression of the spinal cord. There are no structural abnormalities of the right shoulder. The claimant has no clinical signs of ongoing nerve root compression which might be expected based on the degree of pain alleged. She has normal reflex, motor, and sensory findings and an EMG of the right upper extremity was also normal. Further, the claimant had not required such aggressive measures for symptom relief as use of steroid medication, epidural injections, application of TENS equipment, or enrollment in a pain management program. It is also noted that the claimant continues to travel to New Jersey for treatment and has not sought any local treating source. The undersigned also notes that the claimant refused physical therapy services which were suggested by her attending physician. The treatment regimen, therefore, indicates that the claimant's symptoms are not as intractable as alleged. With regard to her mental condition, the record reveals that the claimant has normal mental status findings and is able to engage in normal activities of daily living independently. In addition, the medical evidence and observations by the [ALJ] do not reveal any evidence of a change in motor tone or bulk such as disuse atrophy, or other change in body habitus or constitutional appearance

8

> such as weight loss, which might be expected in a person whose activities are markedly restricted due to a debilitating disease process. These factors indicate that the claimant's allegations of functional restrictions are not fully credible.
> *Id.* at 17-18.

Dr. Yager also provided a medical source statement indicating that Plaintiff was incapable of performing sedentary work. *Id.* at 314-320. The ALJ noted the following with regard to this medical source statement:

> The treating physician's opinion is not supported by any objective findings that would substantiate the degree of restriction cited. Further, Dr. Yager is a primary care physician and not an orthopedic or neurological specialist. The [ALJ] finds that the opinions expressed by the State agency consultants in Exhibit 5F are more consistent with the longitudinal medical record. Therefore, the [ALJ] gives little weight to Dr. Yager's opinion.
> *Id.* at 18.

On April 6, 2004, Dr. S. Schoen assessed Plaintiff's RFC. *Id.* at 189-196. Dr. Schoen determined that Plaintiff could: 1) occasionally lift and/or carry 50 pounds; 2) frequently lift and/or carry 25 pounds; 3) stand and/or walk about 6 hours in an 8-hour workday; and 4) sit for a total of about 6 hours in an 8-hour workday. *Id.* at 190. In making these observations, Dr. Schoen noted that Plaintiff's: 1) neurological exams were "entirely consistently negative"; 2) shoulder x-ray did not show any abnormality; 3) physical examination showed no neuro-muscular or sensory deficit; 4) EMG was negative; and 5) joint and muscle strength and range of motion was intact in all extremities. *Id.* at 190. Furthermore, Dr. Schoen observed that Plaintiff did not have any postural, visual, communicative, or environmental limitations *Id.* at 191-193. With regard to manipulative limitations, Dr.

9

Schoen indicated that Plaintiff was only limited when reaching. *Id.* at 192. Plaintiff had no limitations with regard to handling, fingering or her sense of touch. *Id.*

Dr. J. F. Joynson conducted a psychiatric review of Plaintiff on April 12, 2004. *Id.* at 200-213. It was determined that Plaintiff's impairments did not satisfy the diagnostic criteria of Listing 12.04, Affective Disorders. *Id.* at 203. In addition, Plaintiff was found to have: 1) mild restrictions of activities of daily living; 2) mild difficulties in maintaining social functioning; 3) moderate difficulties in maintaining concentration, persistence or pace; and 4) no repeated episodes of decompensation. *Id.* at 210. Likewise, Dr. Joynson opined that the evidence did not establish the presence of the "C" criteria of the Listings. *Id.* at 211. Dr. Joynson also conducted an assessment of Plaintiff's mental RFC. *Id.* at 214-217. Plaintiff was found to be "not significantly limited" in most of the areas related to mental RFC, although it was noted that she was moderately limited in her: 1) ability to understand and remember detailed instructions; 2) ability to carry out detailed instructions; and 3) her ability to maintain concentration for extended periods. *Id.* 214-215. Ultimately, Dr. Joynson stated that Plaintiff: 1) could sustain adequate concentration, persistence and pace; and 2) is able to perform simple, routine, work-related activities. *Id.* at 216.

Based on this record, the ALJ made the following findings with regard to whether Plaintiff's impairments met or medical equaled one of the listed impairments:

> The [ALJ] notes that the claimant has also alleged disability due to asthma and gastroesophageal reflux disease (GERD). The medical record reveals that the claimant has not had any acute asthma attacks of such severity that she required emergency medical treatment since her alleged onset date. She does not have any clinical signs of respiratory insufficiency. With regard to her

10

GERD, the record reveals that the claimant has not suffered any weight loss, anemia, or other complications from this condition. The [ALJ] finds that the claimant's asthma and GERD do not significantly impact on her ability to perform basic work-related activities and do not represent severe impairments . . .

The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments . . .

The claimant does not have symptoms or signs of nerve root compression syndrome, arachnoiditis or lumbar stenosis as required for degenerative disc disease to meet Listing 1.04. The claimant's depressive disorder has not resulted in marked limitation in two areas of functioning as required to meet Listing 12.04A and B and there is no historical evidence to establish the presence of the "C criteria" required to meet Listing 12.04C. The claimant's conditions are not manifested by other clinical findings indicating a level of severity comparable to the criteria of those Listings and, therefore, her conditions can not be found to medically equal the criteria of the relevant Listings.

With regard to her depressive disorder, the [ALJ] finds that this condition has resulted in mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate deficiencies in maintaining concentration, persistence, and pace. She has not had any episodes of deterioration or decompensation of extended duration.
*Id.* at 14-15.

Likewise, the ALJ made the following finding with regard to Plaintiff's RFC:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a wide range of light, unskilled work. The claimant can sit, stand, and walk for up to 60 minutes each at one time and for a total of 6 hours in an 8-hour day. She requires a work environment in which she can change between sitting and standing positions at her discretion. She can lift 20 pounds occasionally and 15 pounds frequently. She is able to perform tasks requiring grasping, handling, reaching, and fingering occasionally. She is not able to perform any tasks requiring climbing ladders, scaffolds, or ropes. She requires an indoor work environment which does not involved [sic] exposure to industrial irritants, dust, or excessive heat. She is limited to performing simple, routine, repetitive tasks that do not involve complex reading. She also requires a job setting that

11

requires only limited interaction with supervisors, coworkers, and the public. *Id.* at 15.

Finally, a vocational expert ("VE") testified at the administrative hearing. *Id.* at 45-51. Based on the VE's testimony, the ALJ determined that Plaintiff was not capable of performing her past relevant work. *Id.* at 19, 47-48. However, the VE testified that a person of Plaintiff's RFC, age, education and work experience could perform requirements of the following occupations: 1) photocopy operator; 2) mail clerk, and 3) office helper. *Id.* at 19-20, 48-49. Each of these jobs exist in significant numbers in the national economy. *Id.* Accordingly, the ALJ determined that Plaintiff had not been under a disability through the date of his decision. *Id.* at 20.

Based on the forgoing record, the Court hereby finds that there was substantial evidence to support each of the ALJ's conclusions. Moreover, the ALJ properly considered all relevant evidence, including the evidence favorable to Plaintiff, weighed conflicting evidence, and fully explained the factual basis for his resolutions of conflicts in the evidence. Although Plaintiff lists several assignments of error, most of these assignments essentially contend that the ALJ improperly weighed the evidence before him. However, this Court must uphold Defendant's final decision if it is supported by substantial evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. Because that is what Plaintiff requests this Court to do, the bulk of her assignments

12

of error are meritless on their face. Nonetheless, the Court shall specifically address Plaintiff's assignments of error.

## A.  The ALJ did not err in determining that Plaintiff's impairments did not meet or equal a listed impairment

First, Plaintiff asserts that the ALJ erred in determining that Plaintiff did not meet or equal Listings 1.04 and 12.04. Listing 1.04, states:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine);
> or
> B.  Spinal arachnoiditis , confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifesting by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> or
> C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by finding on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively . . . .
> 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04.

Listing 12.04 states:

> Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
> The required level of severity for these disorders is met when . . . [the condition results] in at least two of the following:
> 1.  Marked restriction of activities of daily living; or

13

      2. Marked difficulties in maintaining social functioning; or
      3. Marked difficulties in maintaining concentration, persistence, or pace; or
      4. Repeated episodes of decompensation, each of extended duration;
     Or
     C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
  1. Repeated episodes of decompensation, each of extended duration; or
  2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause the individual to decompensate; or
  3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.
  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.04.

The burden of demonstrating that her impairments satisfy this listing is upon Plaintiff. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). Despite this burden, Plaintiff's argument consists of little more than the bald assertion that she meets these respective Listings. Regardless, the relevant medical evidence has already been discussed at length and it supports the ALJ's finding that Plaintiff does not have symptoms or signs of a nerve root compression syndrome, arachnoiditis, or lumbar stenosis as required by Listing 1.04. Likewise, the medical evidence supports the ALJ's finding that Plaintiff's depressive disorder did not result in marked limitations as required by Listing 12.04. For these reasons, this assignment of error is meritless.

**B. Plaintiff's supplemental evidence was properly considered**

Plaintiff complains that "the Appeals Council failed to give an explanation of what weight was given to . . . supplemental evidence [provided by Plaintiff after the ALJ's decision] and why it was given that weight. Pl. Mem., DE-15, pg. 11. In the instant matter,

14

the Appeals Council informed Plaintiff that it considered the supplemental evidence provided by Plaintiff and determined that it did not provide a basis for changing the ALJ's decision (Tr. 5-6). This argument is meritless because the Fourth Circuit has stated that, generally, "the regulation addressing additional evidence does not direct that the Appeals Council announce detailed reasons for finding that the evidence did not warrant a change in the ALJ's decision . . ." Hollar v. Commissioner of Social Security Administration, 194 F.3d 1304 (4th Cir. 1999)(unpublished opinion)(*citing* 20 C.F.R. 404.970(b)(1999)). Regardless, the undersigned has reviewed the entire record, including the supplemental evidence discussed by Plaintiff. Even after considering Plaintiff's supplemental evidence, the undersigned still finds that substantial evidence supports each of the ALJ's conclusions.

### C. The ALJ properly considered the medical record in this case

Plaintiff also contends that the ALJ disregarded the opinions of Plaintiff's treating physician, Dr. Yager. It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. Wireman v. Barnhart, 2006 WL 2565245 (Slip Op. at 8)(W.D.Va. 2006)(internal citations omitted). Furthermore, "while an ALJ may not reject medical evidence for no reason or the wrong reason . . .an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings." *Id.* (internal citations omitted).

While "the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given

15

controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992) (per curiam). Rather, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro, 270 F.3d at 178. Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. In sum, "an ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion." Koonce v. Apfel, 166 F.3d 1209 (4th Cir.1999) (unpublished opinion)(internal citations omitted).

In his order, the ALJ explained his reasons for giving Dr. Yager's opinion less than controlling weight. The ALJ stated that Dr. Yager's opinion not supported by the medical evidence of record (Tr. 18). This determination by the ALJ was supported by substantial evidence and, therefore, this assignment of error is also meritless.

## D. The ALJ properly evaluated Plaintiff's RFC

Plaintiff argues that there was not substantial evidence to support the ALJ's finding regarding Plaintiff's residual functional capacity ("RFC"). An individual's RFC is what that person can still do despite physical and mental impairments. 20 C.F.R. §§ 404.1545, 416.945(a). RFC is determined at the fourth step of the sequential evaluation process. As previously noted, Plaintiff's argument consists primarily of highlighting evidence the ALJ

allegedly "failed" to consider.  Once again, Plaintiff asks this Court to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. The undersigned declines to do so.

The medical record relied upon by the ALJ has already been summarized.  This medical record contained substantial evidence to support each of the ALJ's findings, including his assessment of Plaintiff's RFC.  Because there is substantial evidence in the record to support the ALJ's RFC determination, this assignment of error is without merit.

### E.  Plaintiff's subjective complaints were properly considered

Plaintiff assigns error to the ALJ's determination regarding the credibility of Plaintiff's testimony.  The ALJ's findings with regard to Plaintiff's subjective complaints have already been summarized.  "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).  The ALJ's findings of fact demonstrate that gave proper weight to all of Plaintiff's limitations and impairments, including pain, in assessing Plaintiff's credibility (Tr. 12-20). Likewise, the ALJ's citations to Plaintiff's medical records, as outlined *supra.*, constitute substantial evidence which support this assessment.  Accordingly, this assignment of error is meritless.

### F.  The ALJ did not err in determining Plaintiff could perform other work

Plaintiff also argues that Defendant has failed to carry the burden of proof of establishing that there was other work which Plaintiff could do.  This assignment of error

17

essentially restates the argument that there was not substantial evidence to support the ALJ's finding regarding Plaintiff's RFC. Therefore it is meritless. To reiterate, the medical record relied upon by the ALJ contains substantial evidence to support each of the ALJ's findings, including his assessment of Plaintiff's RFC.

In addition, the Court also notes that an ALJ has "great latitude in posing hypothetical questions [to a VE] and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." Koonce, 166 F.3d at 1209(unpublished opinion). The ALJ is required only to "pose those [hypothetical questions] that are based on substantial evidence and accurately reflect the plaintiff's limitations . . ." France v. Apfel, 87 F. Supp. 2d 484, 490 (D. Md. 2000). Here, the hypothetical question posed to the VE by the ALJ was based on a RFC determination supported by substantial evidence and therefore accurately reflected all of Plaintiff's limitations. Therefore, it was not error for the ALJ to rely upon the VE's testimony that there were other jobs the national economy which Plaintiff could perform.

## Conclusion

For the reasons discussed above, it is HEREBY RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings **[DE-14]** be DENIED, Defendant's Motion for Judgment on the Pleadings **[DE-20]** be GRANTED, and the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina this 4th day of December, 2007.

18

_____
William A. Webb
U.S. Magistrate Judge

19